[Cite as *English v. Progressive*, 2016-Ohio-847.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


George R. English, Administrator of
the Estate of Dale A. Barnhiser, deceased

      Appellant

v.

Progressive Specialty Insurance
Company, et al.

      Appellee

Court of Appeals No. L-14-1239

Trial Court No. CI0201205257


**DECISION AND JUDGMENT**


Decided:  March 4, 2016

* * * * *

Steven P. Collier, Steven R. Smith, and Janine T. Avila, for appellant.

Andrew J. Ayers, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This case is before the court on appeal from the Lucas County Court of

Common Pleas which granted summary judgment to appellee, Progressive Specialty

Insurance Company ("Progressive"), and denied the motion for summary judgment of appellant, George R. English, Administrator of the Estate of Dale A. Barnhiser, deceased. Appellant had sought a declaration that Barnhiser was an insured under his own Progressive policy for purposes of uninsured coverage and benefits, while Progressive had sought a declaration that Barnhiser was not entitled to recover such benefits. For the reasons that follow, we reverse the judgment of the trial court.

{¶ 2} On August 4, 2011, Barnhiser was killed as a result of events which occurred on Interstate 475. On that date, at about 5:00 a.m., Michael Borowy was driving a tractor trailer in the right-hand lane of northbound I-475 when James South, who was driving a pick-up truck, attempted to merge onto the highway from the Dussel Drive entrance ramp, and in so doing collided with Borowy's truck. As a result of the collision, South's pick-up truck came to rest in the right lane of the highway.

{¶ 3} Following the accident, a number of motorists stopped to offer assistance, including Barnhiser, who had been operating his motorcycle. Several minutes later, as South and the other motorists stood on the highway in the vicinity of South's disabled pick-up, a tractor trailer truck driven by John Neal Tucker and owned by Estes Express Lines ("Estes") collided with South's pick-up truck. South, Barnhiser and another motorist were killed.

{¶ 4} At the time of the accidents, South was uninsured and Barnhiser was insured under a Progressive motorcycle policy, which included uninsured/underinsured motorist

2.

("UM/UIM") coverage in the amount of $250,000 each person/$500,000 each accident, and Estes had liability insurance coverage of $5,000,000, which insured Tucker.

{¶ 5} On August 27, 2012, a confidential settlement was reached between appellant, Estes and Tucker.

{¶ 6} On September 11, 2012, appellant filed a complaint against Progressive and South's estate. Appellant alleged as a result of South's negligence, Tucker struck and killed Barnhiser. Appellant alleged South was uninsured at the time of the collision. Appellant sought a declaration that Barnhiser was an insured under the Progressive policy for purposes of UM coverage, and that appellant was entitled to UM benefits.

{¶ 7} On September 25, 2012, Progressive filed a counterclaim against appellant for declaratory judgment as well as a third-party complaint against Tucker and Estes for declaratory judgment. Ultimately, Progressive voluntarily dismissed its third-party complaint against Estes and Tucker.

{¶ 8} A default judgment for liability was granted for appellant against South's estate on November 30, 2012. Subsequently, a damages hearing was held. Progressive was notified of the hearing but did not attend. Appellant was awarded damages in the amount of $2,907,522.44 against South's estate.

{¶ 9} On December 5, 2012, appellant moved for summary judgment and requested a declaration that Progressive was obligated to pay appellant for damages he was legally entitled to recover from South's estate up to the per person limit of UM coverage under Barnhiser's Progressive policy.

3.

{¶ 10} Progressive also moved for summary judgment arguing appellant was not entitled to recover UM/UIM benefits for several reasons. First, if the court concluded two accidents occurred, there was no coverage because Barnhiser was not injured in the accident which involved the uninsured driver. Next, if the court decided one accident occurred, there was no coverage because Tucker was not an uninsured or underinsured driver. Last, if the court decided one accident occurred and UM/UIM coverage applied, no UM/UIM benefits were payable under the policy "because any liability coverage, by contract, is reduced by the amounts paid by those persons responsible for Plaintiff's decedent's injuries - in this case that party could only be determined to be Tucker."

{¶ 11} In April 2013, a jury trial was held in Maumee Municipal Court and Tucker was found not guilty of vehicular homicide, vehicular manslaughter and fatality through negligent operation.

{¶ 12} A stipulation between appellant and Progressive was filed on April 17, 2013, attached to which was the transcript of Tucker's interview with the Ohio State Highway Patrol on the morning of August 4, 2011. The parties stipulated Tucker's statement could be used for all purposes in this case.

{¶ 13} On April 10, 2014, the trial court granted summary judgment to Progressive and against appellant. Appellant appealed, setting forth one assignment of error:

The Trial Court erred by granting the motion for summary judgment

of defendant Progressive Specialty Insurance Company (Progressive), and

4.

denying Appellant's motion for summary judgment, when it determined the settlement amount between Appellant and Estes Express Lines and John Tucker reduced any available uninsured motorist coverage (UM) to zero.

## Standard of Review - Motion for Summary Judgment

{¶ 14} In order for summary judgment to be granted, the movant must prove that "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

{¶ 15} An appellate court reviews a trial court's granting of summary judgment de novo and the appellate court applies the same standard used by the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241(1996). Thus, we will independently review the record, giving no deference to the trial court's decision. *Thayer v. Diver*, 6th Dist. Lucas No. L-07-1415, 2009-Ohio-2053, ¶ 26.

## Contract Law

{¶ 16} In reviewing a written contract, our primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). We presume the intent of the parties to a contract is contained in the language used in the written contract. *Kelly v. Med. Life Ins.*

5.

*Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. If we can ascertain the intent of the parties from the plain language of the contract, there is no need for interpretation. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

{¶ 17} An insurance policy is a contract and its interpretation is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. Contract terms must be given their plain and ordinary meaning. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982). If a contract provision is susceptible to more than one interpretation, it "will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus.

**Progressive Policy**

{¶ 18} Appellant's decedent's Progressive insurance policy provides in relevant part:

PART III - UNINSURED/UNDERINSURED MOTORIST

COVERAGE INSURING AGREEMENT - UNINSURED/

UNDERINSURED MOTORIST BODILY INJURY COVERAGE

If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from an uninsured motorist or underinsured motorist because of bodily injury * * *.

6.

The limits of liability under this Part III will be reduced by:

1. all sums paid because of bodily injury or property damage by or on behalf of any persons or organizations that may be legally responsible;

2. all sums paid under Part I – Liability to others; and

3. any other amounts available for payment for bodily injury or properly damages under liability bonds and policies covering person liable to the insured person.

\* \* \*

No one will be entitled to duplicate payments for the same elements of damages.

### Parties' Arguments

{¶ 19} Appellant argues the trial court's judgment is against the public policy underlying UM coverage as well as the public policy to encourage settlements. Appellant further contends the limits of liability provision in the Progressive policy is ambiguous, which requires the court to construe the language in favor of coverage and against any restriction on coverage. Appellant asserts the phrase "may be legally responsible" could have several meanings in the context where injury is caused by an uninsured driver as well as an insured driver.

{¶ 20} Progressive counters the plain and ordinary language of the limits of liability provision in the policy is unambiguous. Progressive observes the trial court "followed the policy language and found the payment by Estes and Tucker, an

7.

organization and party legally responsible for Barnhiser's death reduced the limit of liability under Part III to zero." Progressive claims it is undisputed that Tucker "failed to maintain an assured clear distance with the vehicles and pedestrians on the bridge."

{¶ 21} Progressive further argues appellant is asking the court to find that R.C. 3937.18(C)[1] no longer authorizes insurance companies to include its terms in UM endorsements. Progressive maintains R.C. 3937.18(C) is clear that when the amounts available for payment on behalf of tortfeasors exceeds the damaged party's UM coverage limits, the UM limits are reduced to zero.

{¶ 22} In addition, Progressive contends the trial court granted its motion for summary judgment and "[a]fter the court dismissed Progressive as a party, appellant requested a hearing to assess damages against South." Progressive submits "[b]ecause all claims had been dismissed against Progressive, it did not appear for the hearing on damages and had no standing to appear." Progressive maintains the damages awarded against South are only binding on South.

{¶ 23} In reply, appellant argues Progressive is bound by the judgment against South's estate as Progressive had every opportunity to litigate South's liability but declined to do so. Appellant submits since the summary judgment decision was not a

---

[1]This provision provides in relevant part:

> If underinsured motorist coverage is included in a policy of insurance, the underinsured motorist coverage shall provide * * *. Underinsured motorist coverage in this state * * *. The policy limits of the underinsured motorist coverage shall be reduced * * *.

8.

final appealable order, the action was not terminated as to any of the parties, pursuant to Civ.R. 54(B). Appellant also argues R.C. 3937.18(C) deals with UIM coverage not UM coverage and therefore does not apply in this case.

{¶ 24} Appellant further asserts the liability of Tucker and Estes was hotly disputed, and Tucker and Estes denied liability and did not admit fault as part of their settlement. Appellant contends the judgment against South's estate established that South was the sole and proximate cause of Barnhiser's injuries, and no other party is or may be legally responsible for those injuries.

{¶ 25} Before examining the Progressive insurance policy, we will address two other issues raised by the parties.

### R.C. 3937.18(C)

{¶ 26} While Progressive argues R.C. 3937.18(C) applies in this case, it is apparent that this this provision refers only to UIM coverage and not UM coverage. As appellant is seeking benefits under UM coverage, R.C. 3937.18(C) is inapplicable in this case.

### Effect of the Default Judgment

{¶ 27} A default judgment is not binding on a co-defendant who is not in default when that co-defendant did not have a meaningful opportunity to present a defense. *Archacki v. [Greater Cleveland] Regional Transit Auth.*, 8 Ohio St.3d 13, 14, 455 N.E.2d 1285 (1983). The co-defendant must be given the chance to controvert evidence presented at a default hearing. *Id.* at 15.

{¶ 28} Here, the record shows Progressive had notice of the assessment of damages hearing on the default judgment against South's estate, but did not attend. The issue of Progressive's standing to attend the hearing was not raised. Progressive was offered the opportunity to participate in the hearing, but chose not to do so.

{¶ 29} We find the default judgment against South's estate is binding on Progressive as Progressive had a reasonable opportunity to protect its interest by participating in the assessment of damages hearing.

{¶ 30} The issue before us is whether Progressive was entitled to reduce the limits of liability under Part III of the insurance policy because of the sums paid to appellant by or on behalf of Tucker and Estes.

{¶ 31} A review of the Progressive insurance policy shows the language plainly and clearly provides that Progressive will pay damages that an insured is legally entitled to recover from an uninsured motorist because of bodily injury, reduced by sums paid because of bodily injury by or on behalf of persons or organizations that may be legally responsible. The term "legally responsible" is not defined in the policy, therefore the plain and ordinary meaning must be applied.

{¶ 32} It is undisputed that appellant is legally entitled to recover from South's estate the amount of $2,907,522.44 because of bodily injuries, and Progressive is obligated to pay appellant $250,000 in UM benefits, "reduced by * * * all sums paid because of bodily injury or property damage by or on behalf of any persons or organizations that may be legally responsible." Here is where the dispute lies.

10.

Progressive insists Tucker and Estes are legally responsible because Tucker failed to maintain an assured clear distance, while appellant maintains Tucker and Estes cannot and may not be legally responsible because the judgment against South establishes South was the sole and proximate cause of Barnhiser's injuries.

### The Law of Liability/Legal Responsibility

{¶ 33} The assured-clear-distance statute, R.C. 4511.21(A), states "no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." A violation of this statute is negligence per se. *Pond v. Leslein*, 72 Ohio St.3d 50, 53, 647 N.E.2d 477 (1995). However, "[w]here conflicting evidence is introduced with respect to the assured-clear-distance-ahead provision (R.C. 4511.21[A]), the issue of whether an object is reasonably discernible on a highway during nighttime hours is usually a question of fact for a jury to determine." *Sharp v. Norfolk & W. Ry. Co.*, 36 Ohio St.3d 172, 522 N.E.2d 528 (1988), syllabus.

{¶ 34} Negligence per se does not equate to liability per se. *Merchants Mut. Ins. Co. v. Baker*, 15 Ohio St.3d 316, 318, 473 N.E.2d 827 (1984). A finding of negligence per se "does not mean that [such] negligence was the sole proximate cause, or even a proximate cause, of the collision." *Smiddy v. The Wedding Party*, 30 Ohio St.3d 35, 40, 506 N.E.2d 212 (1987). Where reasonable minds could differ as to proximate cause, it is an issue to be determined by the trier of fact. *Id.*

11.

**{¶ 35}** Furthermore, a settlement is not tantamount to admitting liability or responsibility. *Fidelholtz v. Peller*, 81 Ohio St.3d 197, 201, 690 N.E.2d 502 (1998). "Defendants settle for many reasons, such as the avoidance of bad publicity and litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships." *Id.*

**{¶ 36}** A summary of some of the evidence submitted by the parties follows.

### Transcript of Tucker's Interview

**{¶ 37}** In his interview with police, Tucker stated that right before the accident, he was coming from Columbus, Ohio and heading to Flint, Michigan. He drives the Flint to Columbus and back to Flint trip every night and has been doing it for one and a half to two years. Tucker slept the day before from about 9:30 or 10:00 a.m. to about 5:30 p.m., then had supper. He did not have any alcohol to drink. When asked if he had any trouble sleeping during the day, Tucker said, "[y]eah, it's just like everybody else trying to sleep during the day, you know. * * * I was, I was alert."

**{¶ 38}** Tucker started off the night at about 8:00 p.m., and left the yard around 8:30 p.m. He did a pre-trip inspection on his truck and did not have any trouble with the truck. He arrived in Columbus at 1:00 a.m. Tucker ate a sandwich at 2:00 a.m. and had some coffee. Tucker said the weather was clear, there was hardly any traffic. Just before the accident, which occurred around 5:00 a.m., Tucker was operating his truck in the right- hand lane of the highway, traveling at about 60 m.p.h., when he came upon a dark car with no lights in his lane. Tucker recalled, "it wasn't real dark * * * Must have been

12.

dark enough, I guess, because I just, I didn't see that car until I was, I was right on it." Tucker "jumped on the brakes" and "scrubbed off some speed" before hitting the vehicle.

{¶ 39} At the time of the accident, Tucker was wearing his seatbelt and was not talking on his cell phone or texting. He was 65 years old and was on medication for high blood pressure, gout and edema in his legs.

**Other Evidence in the Record**

{¶ 40} Progressive and appellant both attached uncertified excerpts of witness testimony from Tucker's criminal trial as exhibits to their respective reply and surreply. There is no indication on the docket that the full transcript of Tucker's criminal trial was filed with the trial court or with this court. The excerpts do not fall under any of the types of evidence a court may consider when determining a summary judgment motion, nor were the portions of the trial transcript authenticated as required by Civ.R. 56(C). However, it has been recognized that while a court need not consider improper summary judgment evidence, a court may consider such evidence if no objection is raised. *Bowmer v. Dettelbach*, 109 Ohio App.3d 680, 684, 672 N.E.2d 1081 (6th Dist.1996). Here, since both parties offered uncertified transcript excerpts and they were considered by the trial court, we will also consider the excerpts in making our determination.

{¶ 41} The witness testimony, offered by Progressive and appellant, mainly focused on the lighting and visibility in the area where the accidents occurred and whether South's truck was discernible. The witnesses were asked and gave conflicting accounts of whether the headlights on South's truck were on or off as South's truck sat in

13.

the right- hand lane of the highway. In addition, the witnesses gave differing accounts of whether the dome light inside of South's truck was on or off. There was also some witness testimony about the lack of braking sounds before Tucker's truck struck South's pick-up.

{¶ 42} A review of all of the evidence in the record shows there are genuine issues of material fact as to whether Tucker was negligent, and if so, whether Tucker's negligence was a proximate cause of Barnhiser's injuries. Thus, questions of fact exist as to whether Tucker and Estes may be legally responsible for Barnhiser's injuries. Therefore, the trial court erred in granting summary judgment to Progressive. Accordingly, appellant's assignment of error is well-taken.

{¶ 43} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. Costs to appellee, pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                        _____
                                                        JUDGE

Arlene Singer, J.              

                                        _____

Stephen A. Yarbrough, J.                                        JUDGE
CONCUR.


                                        _____
                                                        JUDGE


14.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.