[Cite as *Meyer v. Meyer*, 2016-Ohio-5806.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Andrew J. Meyer, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-253 |
| v. | : | (C.P.C. No. 11DR-3197) |
| Tami K. Meyer, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 13, 2016

**On brief:** *Hillard M. Abroms*, for appellant. **Argued:** *Hillard M. Abroms.*

**On brief:** *Grossman Law Offices*, *Jeffrey A. Grossman* and *John H. Cousins, IV*, for appellee. **Argued:** *Jeffrey A. Grossman.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

HORTON, J.

{¶ 1} Defendant-appellant, Tami K. Meyer, appeals a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, issued on March 4, 2016, which declined to hold plaintiff-appellee, Andrew J. Meyer, in contempt for alleged violations of a divorce decree issued regarding the parties approximately three years earlier on May 1, 2013. Because we find that the trial court did not abuse its discretion, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   This case began when, on August 16, 2011, Andrew[1] filed a complaint for divorce. (Aug. 16, 2011 Compl.)  The parties eventually came to an agreement via an in-court settlement; whereupon the trial court issued a divorce decree and adopted a shared parenting plan in accord with the agreement of the parties. (May 1, 2013 Divorce Decree; May 1, 2013 Shared Parenting Plan.)

{¶ 3}   On April 4, 2014, Tami filed a motion for a finding of contempt against Andrew to which she attached an affidavit setting forth the factual grounds for the motion. (Apr. 4, 2014 Mot. for Contempt.)   In the affidavit she described several purported violations of the divorce decree on the part of Andrew. (Tami Aff. at ¶ 1-5.)  In response, Andrew, on April 22, filed a motion to divide personal property alleging that Tami had not been cooperative in permitting him to retrieve personal property. (Apr. 22, 2014 Mot. to Divide Property.)  Approximately ten months later, on February 24, 2015, Tami supplemented her motion for a finding of contempt with several new allegations. (Feb. 24, 2015 Amend. Mot. for Contempt.)

{¶ 4}   On March 3, 2015, the trial court convened a hearing and allowed both parties to present evidence, which both did, in the form of their own testimony. (Mar. 3, 2015 Tr.)  The trial court reconvened approximately one year later, on February 23, 2016, to complete the hearing, at which time counsel for both sides gave argument and updated the trial court on the state of cooperation (or lack thereof) between the parties in effectuating the divorce decree. (Feb. 23, 2016 Tr.)

{¶ 5}   On March 4, 2016, having heard testimony of both parties and considering the arguments and assertions of counsel, the trial court issued a detailed decision that addressed each and every claimed ground for contempt and declined to find Andrew in contempt. (Mar. 4, 2016 Decision.)  Following that decision, Tami filed a notice of appeal. (Apr. 1, 2016, Notice of Appeal.)  Contemporaneously, she also filed a motion to set aside the decision and strike references to the transcripts of the hearings before the trial court. (Apr. 1, 2016, Mot. to Strike.)  Because of the pending appeal, the trial court declined to consider the motion to set aside or strike the decision. (Apr. 22, 2016 Entry Declining Decision.)

---

[1] Because the parties share a last name, for the sake of clarity we refer to each by first name.  No informality or disrespect is intended.

## II. ASSIGNMENTS OF ERROR

{¶ 6}  Tami assigns two errors for our review, one of which is divided into two sub-parts:

> **ERROR 1**
>
> **A. The trial court abused its discretion and committed reversible Error by ignoring and failing to follow the controlling law from ORC 2705-Contempt of Court and this 10th District Court of Appeals in *Large v. Large, supra* as well as the body of case law mandating a finding of contempt of Court.**
>
> **B. The trial court abused its discretion and committed reversible Error by following a different standard of consideration of the testimony and evidence offered by Appellant in her motions for contempt versus only the testimony of Appellee.**
>
> **ERROR 2**
>
> **The trial court erroneously relied upon and used an unfiled, uncertified copy of the transcription of the March 3, 2015 hearing provided by Plaintiff-Appellee's counsel prior to the beginning of the February 23, 2016 hearing.**

## III.  DISCUSSION

### A. First Assignment of Error – Whether the Trial Court was Required to Hold Andrew in Contempt[2]

{¶ 7}  The Ohio Revised Code provides a "person guilty of," among other things, "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court," or "failure to comply with an order issued pursuant to section 3109.19 or 3111.81 of the Revised Code," "*may* be punished as for a contempt[.]" (Emphasis added.) R.C. 2705.02(A) and (F). In addition, we have observed that "a trial court may decline to hold a party in contempt even when one party is definitively aggrieved by the disobedience of another party of an order of the court." *Hopson v. Hopson*, 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 12, citing *Lentz v. Lentz*, 19 Ohio App. 329, 333 (10th Dist.1924).  In short, despite the "mandatory" contempt assertion in

---

[2] Although Tami's brief asserts a second branch of this first assignment of error, it is not separately argued or explained anywhere in the body of the brief.  We therefore disregard it. App.R. 12(A)(2).

Tami's assignment of error, both as a matter of statute and case law, whether to find a party in contempt is a matter within the discretion of the trial court. Consistent with that observation, we review decisions on contempt for abuse of discretion. *Hopson* at ¶ 9.

{¶ 8}    In her motion and amended motion for contempt, Tami alleged contempt on a number of grounds. The trial court addressed each of these in turn in its decision. Now on appeal, Tami addresses a limited number of these grounds in sequence.  We shall address each individually but limit our discussion to those issues which Tami argues in her brief.

### 1.  $100,000 and Return of Personal Property

{¶ 9}    In her motion, Tami alleged that Andrew owed her $100,000 pursuant to the decree and had not paid. (Tami Aff. at ¶ 2.)[3]  At the hearing, Andrew admitted that he owed the $100,000, stated that he had the money in the bank, and a check written. (Mar. 3, 2015 Tr. at 37-41.)  He explained that he had been trying to arrange a time to go over to the former marital residence to give Tami the check and, at the same time, retrieve certain items of personal property to which he was entitled but that Tami, unwilling to part with the personal property, had thwarted him. *Id.*

{¶ 10}  The divorce decree provided in relevant part:

> Each of the parties shall be entitled to retain those items of personalty currently in their possession except as otherwise provided herein. The parties agree that personal effects, art, etc. that are presently maintained in the North Ardmore Road residence shall be divided by agreement of the parties. To that extent, any personalty that originated from either party's family shall be awarded to that individual. In the event that a dispute arises with regard to the division of said personal property, the Court retains jurisdiction to order a method of division including the parties alternating choices.
>
> * * *
>
> [T]he Plaintiff shall pay a remaining sum of $100,000 to the Defendant. Said payment shall be made to Defendant within six (6) months of the date of divorce or sooner, if possible.

(Divorce Decree at 8-9.)

---

[3] The affidavit contains two paragraphs numbered "2."  This is the first.

{¶ 11} The trial court recognized that Andrew had withheld payment but called the withholding "justified." The trial court reasoned that in light of the fact that "Tami's behavior largely contributed to the prolonged dispute regarding the division of the parties' personal property" in that "[w]hen the parties were close to an agreement, Tami changed her mind at the last minute, causing the deal to implode and increasing both parties' legal fees." (Decision at 5.)  This court does not agree that Andrew's intentional and unilateral disregard of a court-imposed duty to make payment can ever be considered "justified." Such blatant disregard of a specific court order usurps the very power of our judiciary and erodes the fabric of our civil union.  However, in light of the trial court's finding that "neither party has clean hands" and both "equally contributed" to the prolonged dispute, we detect no abuse of discretion in failing to find contempt in such circumstances. (Decision at 5.)  In any event, by the time the trial court decided the motion, the parties had divided the "personal property to their mutual satisfaction and [] Andrew had paid Tami $100,000." *Id.*  Thus, as the trial court concluded:

> [N]ot only have these matters been resolved, the court finds that neither party has clean hands. The court believes that Tami and Andrew equally contributed to the acrimonious nature and continued conflict revolving around the performance of the aforementioned necessary acts and as a consequence, Andrew's withholding of funds did not rise to the level of contempt.

(Decision at 5.)

### 2. The Lien on 98 North Ardmore Road

{¶ 12} Tami argued that Andrew had failed to satisfy a lien on the property at 98 North Ardmore Road and perjured himself by lying about having done so. (Tami Aff. at ¶ 2.)[4]  At the hearing, Andrew explained that he thought at the time of the settlement and decree that the lien in question had been released.  However, when it became clear that it had not been, he took steps to make sure that it was released. (Mar. 3, 2015 Tr. at 41-45.) In addition, in the second hearing, counsel explained that though the debt underlying the lien has been fully satisfied and the bank has issued a certificate releasing the lien, for unknown reasons, the lien apparently continues to appear when the title is investigated. (Feb. 23, 2016 Tr. at 15-16.)  Counsel argued that it is not his client's fault that the bank

---

[4] The affidavit contains two paragraphs numbered "2."  This is the second.

has continued to err in this regard. *Id.* In addition, counsel indicated Andrew would be willing to sign an authorization giving Tami the right to take whatever action she deems proper to urge the bank to properly record the release in light of the fact that the debt has been satisfied. *Id.* at 16-17.

{¶ 13} Based on this evidence, argument, and discussion between the parties, the trial court explained its decision not to hold Andrew in contempt:

> Andrew testified that he paid off the second mortgage to PNC Bank which he thought was sufficient to remove the lien. Once Andrew was made aware of the existing lien, he made numerous attempts to have it removed, but to no avail. Tami recently hired an expert to conduct a title search. The court does not find Andrew in contempt. He believed that he was in compliance with the parties' Decree by satisfying the second mortgage to PNC. It is possible the PNC lien was caused by the bank's mistake. While it is unfortunate that Tami had to go to the extent to hire an expert, the court does not find that Andrew is to blame.

(Footnote omitted.) (Decision at 6.)

{¶ 14} Again, we discern no abuse of discretion here.

### 3. Investments

{¶ 15} In her motion, Tami identified five investment assets of which, she claimed, Andrew owed her half: MTL Holdings, First Bexley Bank, Knox Energy, American Funds, and Cool Claws – Pet Specialties. (Tami Aff. at ¶ 3A-3E.)  Tami also asserted problems with other investments in her oral testimony at the March hearing. (Mar. 3, 2015 Tr. at 10-24.)

{¶ 16} With respect to investments, the divorce decree provided in relevant part as follows:

> [T]he American Funds joint account #5103 shall be divided equally between the parties.
>
> The parties currently have an interest in additional assets that may currently be held in the name of the Plaintiff as follows: Breck #1303, MTL Holdings, First Bexley Bank Shares, Cool Claws – Pet Specialties, Carapace, Subway – ECSG and Knox Energy. It is ordered that all of these assets shall be divided equally between the parties with each sharing 50% of the cost necessary to cause the division. For each asset that is divided, each party shall thereafter be entitled to retain their individual benefit derived from ownership of said asset and each shall be

responsible for any future costs or obligations, including taxes associated with such ownership. In the event a particular asset cannot be divided, the parties shall either agree as to which party may take individual ownership of said asset or, if no agreement is reached by the parties, may apply to the Franklin County Court of Common Pleas, Division of Domestic Relations to assist with the resolution of the conflict. The Court hereby retains jurisdiction for the limited purpose of resolving such conflict if one exists.

(Divorce Decree at 6-7.)  Nowhere did the divorce decree speak to any time limit in which the division of assets was to take place or explicitly assign the burden of division to one party or the other.  Indeed, the decree speaks to "sharing" the costs of division which suggests that both parties were, to some extent, responsible for dividing assets. (Divorce Decree at 7.)

{¶ 17} As to MTL Holdings, Tami asserted in her affidavit:

Within a few days of our divorce, I asked the plaintiff the status of the MTL Holdings investment. It wasn't the first time I had asked, but since the case was "final," maybe he thought his answer wouldn't matter anymore. Well, he is wrong. He responded, "Oh, I sold that in 2010." I told him that I was sorry but since he included that asset in the divorce, from the very first filing of his Assets and Liabilities and then throughout the divorce, including the Final Decree, that I was not about to walk away from my share of the funds he received from that sale or any other funds in the MTL account as well as how much is in there, if any. I believe he sold the asset for nearly $25,000, but I want proof of how much he sold it for and then I want my half.

(Tami Aff. at ¶ 3A.)  At the hearing, Andrew testified that, although he listed it originally during the divorce as an asset, he discovered when he went to divide the asset that it had been sold even before the divorce complaint was filed. (Mar. 3, 2015 Tr. at 53-55.)  Thus, the trial court concluded:

Post-decree, Andrew discovered that the parties' interest in MTL was sold July 1, 2010, thus before the divorce was filed. Tami is now demanding to either be awarded one-half interest in MTL or alternatively, one-half of the funds Andrew received from the sale of same. The court finds Tami's request unreasonable. Andrew made a good faith effort in disclosing his numerous business assets throughout this on-going litigation. The court does not find Andrew committed fraud and further finds him credible in that MTL was sold well

> before he filed for divorce and that any income received from the sale went into the marital pot.

(Decision at 7.)

{¶ 18} At the hearing, both Andrew and Tami testified that she had obtained her half of the First Bexley Bank shares. (Mar. 3, 2015 Tr. at 20, 47-48.) Andrew testified that Tami had also received a half-interest payout in the investment known as Carapace. (Tr. at 56-57.) He also testified that he bought out Tami's one-half interest in ECSG Subway by check before settling the divorce. (Tr. at 57.) Tami admitted having received payments for Carapace and Subway but claimed she was not given proof to verify whether the payments were indeed for half of the investment's worth. (Tr. at 21-23.) On this record, the trial court stated:

> Tami acknowledged that she received stock or funds in relation to her interest in Bexley Bank, Carapapace [sic], and Subway ECSG. However, she protests that she has not been provided documentation that demonstrates the stock and/or funds reflect one-half of the marital interest in same. Andrew testified that Tami received one-half of those interests. The court finds Andrew has no obligation to provide Tami with an evaluation of each asset and further found his testimony credible.

(Decision at 7-8.) The trial court also noted, in the context of discussing MTL, that Tami enjoyed subpoena power during the two years the divorce case was pending and could have used it to obtain a valuation of the assets, yet did not do so. (Decision at 7.)

{¶ 19} With respect to Breck #1303 Tami testified that she had not received half of it and did not know what it was. (Mar. 3, 2015 Tr. at 19-20.) Andrew testified, however, that Breck #1303 was a property investment in Breckenridge, Colorado put together by his brother-in-law, that he notified Tami that there was a "cash call" for all investors, and that if Tami wished to continue to participate in the investment, she had to meet her responsibilities regarding the "cash call." (Tr. at 52-53.) He also testified that Tami knows his brother-in-law and is capable of contacting him if she had wished to participate. *Id.*

{¶ 20} In regards to the American Energy Fund investment, Andrew testified that the account had a value of around $500, that he had taken steps to get it divided, and that he had received a check for Tami which he had delivered to Tami's counsel. (Mar. 3, 2015 Tr. at 51.) Thus, by the time the trial court finished the hearing and decided the motion in 2016, the issue had long-since been resolved.

{¶ 21} With respect to the Cool Claws – Pet Specialties investment, Tami testified that there were eight shares and that she had not gotten half of them. (Mar. 3, 2015 Tr. at 20-21.) Andrew testified that the investment had failed, that he had been unable to contact the owner or ascertain if there was any value left, and that Tami could "have all eight shares of it." (Tr. at 55-56.) Thus, by the time of the trial court's decision in 2016, this too had been long-since resolved.

{¶ 22} On the topic of Knox Energy, Tami testified that she was receiving statements from only one of two Knox Energy investments. (Mar. 3, 2015 Tr. at 23-24.) Andrew testified that he was aware of only one Knox Energy and that it had been split with Tami. (Tr. at 57-58.) However, counsel for Andrew clarified in oral argument in the February hearing that Tami's belief that there were two Knox Energy investments was due to the fact that the investment had been split with each party receiving a separate half of the original entity. (Feb. 23, 2016 Tr. at 17-18.)

{¶ 23} The trial court, concluded:

> [T]he court finds that Andrew is not in contempt of the parties' Agreed Decree of Divorce. He has made efforts to effectuate the division of the assets and transfer one-half of same to Tami. The court finds particularly relevant that the parties did not set forth a deadline by which the transfers were to be made, nor impose the duty to transfer solely on Andrew. Of course, Andrew will need to continue to be proactive in dividing these assets but Tami may need to take initiative as well. The high level of animosity between these parties seems to be contributing to the delayed division of these assets.

(Decision at 8.) Given the record as discussed above, we cannot discern any error or abuse of discretion in this conclusion.

### 4. 529 College Savings Account and Life Insurance Documentation

{¶ 24} Tami argued in her motion that Andrew had been dishonest on several matters during the divorce and so she did not believe that he continued to maintain insurance as required. (Tami Aff. at ¶ 5.) In addition, she asserted that Andrew would not cooperate in providing her with statements of the 529 balances and that she should not have "to pay my lawyer to badger his to maybe get the information and reassurance I am entitled to." (Tami Aff. at ¶ 4-5.)

{¶ 25} At the March 2015 hearing, Tami testified that she had not been given updates on the 529 balances despite reasonable requests and had not been provided with

verification of life insurance. (Mar. 3, 2015 Tr. at 14-16.) Andrew testified that he sent year-end account statements for the 529 accounts to Tami for 2013 and 2014 and that he carries life insurance as required with her designated as the beneficiary. (Tr. at 49, 65-67.)

{¶ 26} On the these topics, the divorce decree provided as follows:

> The Plaintiff shall maintain sufficient life insurance with the Defendant named as beneficiary necessary to provide all of Plaintiffs obligations to Defendant until such time as the parties' youngest child is emancipated. Thereafter, to the extent that the Plaintiff's existing life insurance is sufficient, it shall be maintained for the protection of Defendant so long as Plaintiff * * * has a financial obligation to Defendant.
>
> * * *
>
> Plaintiff shall provide documentary evidence relating to the establishment of 529 accounts held for the benefit of the parties' children.

(Divorce Decree at 3, 9.) In addition, the shared parenting plan provided as follows:

> Father shall only use the 529 Accounts for the children's post high school educational expenses. Father shall provide verification of proper use of same. Wife shall receive confirmation of the use and amounts in each account upon her reasonable request.

(May 1, 2013 Shared Parenting Plan at 10.) Nowhere did the decree or plan explicitly require Andrew to provide verification to Tami of his life insurance nor did it specify the type or frequency of documentary evidence to be provided in respect to the 529 accounts.

{¶ 27} On this record, the trial court concluded:

> The parties failed to set forth how often Andrew is required to provide Tami with 529 account balances and life insurance policy information in their Decree. Andrew testified that Tami has had access to this information since their Decree was filed and it was represented to the court that Andrew brought updated statements to the February 23, 2016 hearing. Based on the language of the parties' Decree, Tami is entitled to reassurance that Andrew maintains her as the beneficiary of his life insurance policy and the children's 529 accounts. However the regularity of this reassurance will be at Andrew's reasonable discretion.

(Decision at 9.) We cannot discern an abuse of discretion in failing to find Andrew in contempt here.

### 5. Yard Barbers Paycheck

{¶ 28} Rather than spousal support, the divorce decree provides that Tami is to be employed with Andrew's business, Yard Barbers, Inc. (Divorce Decree at 2-3, 9-11.) Apparently she has generally been so employed and paid accordingly, but, in her amended motion for contempt, Tami alleged that Andrew wrongfully deducted funds from her paychecks from Yard Barbers, Inc. for life insurance that Tami did not elect or approve of and that he "repeatedly failed" to timely issue her paycheck. (Amend. Mot. for Contempt at 2.)

{¶ 29} At the hearing, Tami testified that her most recent check had been delayed and that this had happened before. (Mar. 3, 2015 Tr. at 26-27.) However she did not provide any other concrete examples nor did she testify about any wrongfully deducted funds. Andrew testified that not only were funds not wrongly deducted for life insurance, but that Yard Barbers does not even offer life insurance as a benefit to its employees. (Tr. at 67.) Andrew did admit that the most recent check had been delayed, but testified that a payroll error had caused every employee's paycheck to be delayed and that every employee had received delayed handwritten checks from the company as a result. (Tr. at 68-69.) Andrew testified that he had sent the handwritten check to Tami with his son, but that Tami had somehow not received it, and that he therefore brought it with him to the hearing. (Tr. at 69.)

{¶ 30} The trial court concluded:

> Tami contended that her paycheck from Yard Barbers, Inc. was a few days overdue at the March 3, 2015 hearing and further that Andrew wrongfully deducted funds from her paycheck. Andrew testified that there was a glitch with the company and none of the Yard Barbers employees were paid on their expectant pay day. Andrew sent a personal check along with the parties' son to Tami's house but it was never received by Tami. Andrew stated he personally delivered the paycheck to Tami at the March 3, 2015 hearing. The court finds Tami presented insufficient evidence to demonstrate any wrongful deductions from her Yard Barbers paycheck. * * * The court finds that this matter is moot and further that Andrew is not in contempt of the parties' Agreed Decree of Divorce.

(Decision at 9.) Again, we discern no abuse of discretion in these findings on this record.

### 6. Children's Expenses

{¶ 31} In her amended motion for a finding of contempt, Tami alleged that Andrew failed to reimburse her for medical and non-medical expenses paid by her on behalf of the children. (Amend. Mot. for Contempt at 1.)   The shared parenting plan requires the reimbursement of expenses as follows:

> **EXTRA CURRICULAR COSTS**
>
> Father and Mother shall equally share agreed upon extracurricular activity expenses (both school and non-school related) of the minor children, until the children are emancipated. Any extracurricular expenses (both school and non-school related) not agreed upon, shall be paid by the parent who enrolled the minor children.
>
> For agreed upon extracurricular activity expenses, whichever parent pays the expense, that parent shall notify the other parent within 45 days of the expense being incurred. If not done, claim to reimbursement is waived. Payment shall be made by the other parent within 30 days of notice.

(Shared Parenting Plan at 10.)   With regard to medical expenses, the plan required payments in relevant part as follows:

> Father shall pay 85% and Mother shall pay 15% of all uncovered medical and dental expenses for the children, which are defined as all medical and other health care expenses exceeding the amount paid by the obligor for cash medical support per calendar year.

(Shared Parenting Plan at 9.)

{¶ 32} At the hearing, Tami testified that Andrew had failed to reimburse her for medical and non-medical expenses paid by her on behalf of the children but presented no receipts or other documentation regarding the expenses (other than a spreadsheet she prepared herself). (Mar. 3, 2015 Tr. at 16-18; Ex. A to Feb. 24, 2015 Amend. Mot. for Contempt.)  Andrew denied failing to reimburse medical expenses except with respect to one unspecified bill he said he accidentally paid 80 percent rather than 85 percent and another unspecified bill which he declined to pay because it was for their eldest son who was old enough that he had been emancipated. (Tr. at 58-60.)  He acknowledged failing to pay certain extracurricular expenses but said he did so because Tami refused to reimburse

extracurricular expenses he incurred. (Tr. at 61-64.)  Overall he testified that he feels he pays more than 50 percent of the children's expenses. (Tr. at 70.)

{¶ 33}  The trial court noted on the record at the hearing that the shared parenting plan provides that costs not agreed upon are paid by the enrolling parent. (Tr. at 69-70.) It then concluded in its written decision:

> The court finds that the parties' tit-for-tat *modus operandi*, while not in violation of the terms of their Shared Parenting Plan, only fuels their intense dislike for one another. Without supporting documentation for Tami's medical and extracurricular expenses for which she seeks reimbursement, the court will not find Andrew in contempt.

(Decision at 10.)  We discern no abuse of discretion here.

{¶ 34}  Having concluded that the trial court did not abuse its discretion in any respect challenged by Tami's brief, we overrule her first assignment of error.

### B. Second Assignment of Error – Whether the Trial Court Erred in Relying on Transcripts of the Hearings Before it

{¶ 35}  Tami argues that Andrew's counsel provided the trial court with a transcribed copy of the March hearing and that the trial court impermissibly used these materials in preparing its decision. (Tami's Brief at 25.)   However, in violation of App.R. 16(A)(3),  Tami fails to direct our attention to the place in the record where this error is reflected.  Tami likely fails in this regard because there is no place in the record where this error is reflected; that is, there is no evidence in the record that the trial court relied on an uncertified transcript in drafting its decision.  The trial court judge did mention, in the February hearing, that she had a transcript of the prior hearing but not whether it was somehow unofficial or uncertified. (Feb. 23, 2016 Tr. at 5, 29.)  Moreover, even if the trial court had relied on an uncertified transcript as Tami suggests, the trial court judge was present for the live testimony of the parties, and was entitled to use her notes, transcripts, audio recordings, or any other reasonably reliable method to refresh her recollection of the proceedings. *State v. Waddell*, 75 Ohio St.3d 163 (1996), paragraph one of the syllabus (trial court has discretion to permit jurors to take and rely upon notes); *State v. Withers*, 44 Ohio St.2d 53, fn. 1 (1975) (using an incomplete and uncertified transcript in stating the background facts of the case); *English v. Progressive Specialty Ins. Co.*, 6th Dist. No. L-14-1239, 2016-Ohio-847, ¶ 40 (noting without finding error that the trial court considered uncertified transcript excerpts in making its decision).

{¶ 36} We overrule Tami's second assignment of error.

## IV.  CONCLUSION

{¶ 37} Because most of the matters initially alleged in the motion for contempt were resolved by the time the hearing concluded, because both Andrew and Tami are to blame for the continuing animosity and difficulty in dividing assets, and because there was no credible evidence that Andrew violated the decree in the many ways Tami alleged, the trial court was well-within its discretion after holding a hearing and listening to testimony and argument from both parties, to deny the motion.  In addition, it was not error for the trial court to have refreshed its memory of the hearing with a transcript (certified or not) or any other reasonably reliable record of the proceedings as an aid to recalling the testimony given in order to write the decision. Accordingly, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

DORRIAN, P.J., and TYACK, J., concur.

———————————